ORDERED.

**Dated:  November 23, 2015**

Cynthia C. Jackson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    CASE NO. 6:15-bk-03459-CCJ

**TIRECO, INC.,**                                         CHAPTER 11

                    Debtor.
_____/

## ORDER CONFIRMING PLAN OF REORGANIZATION, AS MODIFIED, SUBMITTED BY TIRECO, INC.

**THIS CASE** came on for continued hearing on October 29, 2015 ("Hearing"), to consider: (i) confirmation of the Debtor's Plan of Reorganization, dated June 16, 2015 ("Plan") (Doc No. 54); Debtor's First Modification to Plan of Reorganization, dated August 11, 2015 ("1st Modification") (Doc No. 72); and Debtor's Second Modification to Plan of Reorganization, dated October 1, 2015 ("2nd Modification") (Doc No. 82), (collectively the Plan, 1st Modification, and 2nd Modification hereinafter referred to as the "Plan"); (ii) final approval of the Debtor's Disclosure Statement, dated June 16, 2015 (the "Disclosure Statement") (Doc No. 53); (iii) the motion to cram down Class 3 – SunTrust Bank, filed August 7, 2015 (Doc No. 70) (the "Cramdown Motion"), and (iv) the motion

to accept the late-filed ballot of Cold Air Distributors Warehouse of Florida, filed on October 21, 2015 (Doc No. 85) (the "Cold Air Late Ballot Motion"); all filed by Tireco, Inc. (the "Debtor"); (v) the Objection to Confirmation filed by the Office of the United States Trustee ("US Trustee Objection") filed on August 6, 2015 (Doc No. 67); (vi) the objection by Tire Centers, Inc. ("TCI Objection"), filed August 11, 2015 (Doc No. 73); (vi) and the motion to accept late-filed ballot of TCI ("TCI Late Ballot Motion"), filed August 11, 2015 (Doc No. 74).

On June 22, 2015, the Court entered the Order Conditionally Approving the Disclosure Statement, Scheduling Confirmation Hearing for August 13, 2015 ("1st Confirmation Hearing"), establishing Confirmation, Compensation, and Administrative Claims Hearing Procedures and Fixing Time for Filing Acceptance or Rejections of the Plan (Doc No. 56).    Thereafter, the 1st Modification was filed and transmitted to creditors and interest holders.   The 1st Confirmation Hearing was held and continued to October 29, 2015.   Thereafter, on October 2, 2015, the Debtor filed its 2nd Modification and Amended Financial Projections (Doc No. 82), an Amended Ballot Tabulation (Doc No. 83), and a Notice of Continued Confirmation Hearing, including a Special Notice pursuant to FRBP 2002(c)(3) (Doc No. 84) ("Continued Hearing"), all of which were served on all creditors and parties-in-interest.   On October 23, 2015, the Debtor filed its Amended Confirmation Affidavit ("Amended Confirmation Affidavit") (Doc No. 87).

After hearing on proper notice, upon review of the Amended Confirmation Affidavit and Amended Ballot Tabulation and proffered testimony at the Continued Hearing; considering the Cramdown Motion, Cold Air and TCI Late Ballot Motions; noting the withdrawal in open court of the US Trustee Objection and the TCI Objection; noting TCI's change in vote to accepting the Plan; taking note of the announcement by counsel for the Debtor that:  (i) it was holding $10,000.00 in his Firm's Escrow Account for Plan payments, and (ii) the Allowed Administrative Claim of Latham, Shuker, Eden & Beaudine, LLP will be paid in equal monthly payments over fourteen (14) months

commencing on the Effective Date; and for the reasons stated orally and recorded in open court, the

Court finds and determines that the requirements of confirmation as set forth in 11 U.S.C. Section

1129(a) and (b) of the Bankruptcy Code have been satisfied.

Accordingly, it is **ORDERED** as follows:

1.      The Disclosure Statement is **APPROVED.**

2.      The Plan, as modified by the 1st and 2nd Modifications, is **CONFIRMED**. A copy of

the Plan is attached hereto as **Exhibit A.**

3.      The Cramdown Motion and Cold Air and TCI Late Ballot Motions are **GRANTED**.

4.      The Debtor is authorized and directed to execute all agreements and undertake the

actions contemplated by the Plan.

5.      The Debtor's Objection to the Claim of TCI (Doc. No. 77)(the "TCI Claim

Objection") is **OVERRULED** as moot due to the Debtor's withdrawal of the TCI Claim Objection

in open Court.  TCI shall have an allowed unsecured claim in the amount of its filed proof of claim.

6.      The Debtor shall file all objections to claims within ninety (90) days of the date of

this Order.

7.      The Debtor shall continue to pay fees assessed pursuant to 28 U.S.C. § 1930(a)(6)

until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or

enters an order either converting this case to a case under Chapter 7 or dismissing this case

pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5).  Additionally, the Debtor

shall file with the Bankruptcy Court post-confirmation financial report or statement of

disbursements for each quarter (or portion thereof) that this Chapter 11 case remains open, in a

format prescribed by the United States Trustee.  The Debtor shall file post-confirmation quarterly

reports until this case is closed, converted, or dismissed.

8.      The Debtor shall file a Certificate of Substantial Consummation and a Motion for Final Decree with thirty (30) days after the later of:

a.      the Effective Date of the Plan; or

b.      disposition of all objections to claims, adversary proceedings, and other contested matters.

9.      In the event the Debtor is unable to comply with the provisions of Local Rule 3022-1, the Debtor shall file a report within ninety (90) days from the date of this Order of Confirmation, setting the progress made in consummating the Plan.  The report shall include:  (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the Debtor has substantially complied with the provisions of the confirmed Plan.

10.      The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to the Order of Confirmation, specifically including, but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the debtor, including any questions relating to any sums of money, services, or property due to the debtor; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

11.      **A Status Conference has been scheduled before the Honorable Cynthia C. Jackson for Thursday, April 21, 2016 at 2:00 p.m., United States Bankruptcy Court, 400 W. Washington Street, 6th Floor, Courtroom D, Orlando, Florida 32801.**

Attorney Justin M. Luna is directed to serve a copy of this order on all interested parties and file a proof of service within three (3) days of entry of the order.

**TIRECO, INC.,**

**CASE NO. 6:15-bk-03459-CCJ**

**CHAPTER 11**

**<u>EXHIBIT A</u>**

**FINAL PLAN OF REORGANIZATION**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:**                                        **CASE NO. 6:15-bk-03459-CCJ**

**TIRECO, INC.,**                              **CHAPTER 11**

                **Debtor.**
_____/


## FINAL PLAN OF REORGANIZATION FOR TIRECO, INC.




COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
CHRISTOPHER R. THOMPSON, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801




October 1 , 2015

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:**                                                   **CASE NO. 6:15-bk-03459-CCJ**

**TIRECO, INC.,**                                     **CHAPTER 11**

                        **Debtor.**

_____/

## FINAL PLAN OF REORGANIZATION FOR TIRECO, INC.

**TIRECO, INC.** (the "Debtor"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I - DEFINITIONS

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to

3

which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

7.      **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

8.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.      **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

10.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

11.      **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

12.      **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:15-bk-03459-CCJ.

13.      **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

14.      **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

15.      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

16.      **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

17.      **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

18.      **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

19.    **Cash Flow Note** means the note containing the terms of repayment for Class 5 Allowed Unsecured Claims, the terms of which are set forth in Article V, Section C, Subsection 1.  Payments under the Cash Flow Note are speculative and may result in no distribution to Class 5 Claim

Holders.  The Debtor will provide quarterly reports to Class 5 Holders indicating gross income and expenses paid, and the existing cash balance, along with a comparison to the cash balance shown in the Projections.

20.    **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

21.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

22.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

23.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

24.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

25.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

26.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

27.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

28.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

29.    **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

30.    **Debtor** means Tireco, Inc.

31.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

32.    **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

33.    **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

34.    **Distribution** means a distribution to the Holders of Allowed Claims.

35.    **Effective Date** means the date upon which this Plan becomes effective and the Debtor starts making Distributions, as set forth in Article VIII herein.

36.    **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

37.    **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtor.

38.    **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

39.    **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

40.    **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

41.    **Fiscal Year** means the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in the following calendar year.

42.    **Guarantors** means Mr. J. Michael Jones and Monica Jones, who are each obligated on certain direct, limited, or conditional guarantees of the Debtor's financial obligations.

43.    **Holder** means the holder of a Claim or Interest, as applicable.

44.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

45.    **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

46.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

47.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

48.    **Person** means "person" as defined in Bankruptcy Code § 101(41).

49.    **Personal Property** means all tangible personal property of the Debtor subject to taxation under Florida law.

50.    **Petition Date** means April 21, 2015, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

51.    **Plan** means this Chapter 11 Plan of reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

52.    **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

53.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

54.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

55.      **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

56.      **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

57.      ***Pro rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

58.      **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

59.      **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

59A.    **Projections** means the Projections attached to the Debtor's Disclosure Statement as Exhibit "A," or any modified or amended projections filed with the Court prior to Confirmation.

60.      **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

61.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

62.     **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.  Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

63.     **Real Property** means the Debtor's real property and improvements located at 2600 West State Road 434, Longwood, Florida 32779.

64.     **Restructuring Support Agreement** means that certain Forbearance Term Sheet and Restructuring Support Agreement entered into by the Debtor and TD Bank prior to the Petition Date.

65.     **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.  The members and the manager of the Reorganized Debtor shall be as set forth in the Plan.

66.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

67.     **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

68.     **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

69.      **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

70.      **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid *ad valorem* taxes.

71.      **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

72.      **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

73.      **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq.* and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.      Secured Claims.

1.      Class 1 – Seminole County Tax Collector (2015 Tangible Property Taxes)

Class 1 consists of the Allowed Secured Claim of the Seminole County Tax Collector for the tangible property taxes assessed on the Debtor's personal property for the 2015 tax year, which taxes are not yet due.  The Class 1 Claim is secured by a statutory lien on the Debtor's personal property and equipment.  Class 1 is Unimpaired.

2.      Class 2 – Seminole County Tax Collector (2015 Real Property Taxes)

Class 2 consists of the Allowed Secured Claim of the Seminole County Tax Collector for the real property taxes due on the Real Property for the 2015 tax year, which taxes are

not yet due.  The Class 2 Claim is secured by a statutory lien on the Real Property.  Class 2 is Unimpaired.

        3.      <u>Class 3 – SunTrust Bank</u>

        Class 3 consists of the Allowed Secured Claim of SunTrust Bank that is secured by a lien on the Debtor's personal property and equipment.  Class 3 is Impaired.

        4.      <u>Class 4 – TD Bank</u>.

        Class 4 consists of the Allowed Secured Claim of TD Bank, which amount shall be equal to the full amount of its filed proof of claim, and such amounts allowed pursuant to § 506(b) of the Bankruptcy Code, less the application of adequate protection payments made towards outstanding principal and interest during the pendency of the Bankruptcy Case, as agreed to by the Debtor and TD Bank in the Restructuring Support Agreement.  The Class 4 Claim is secured by a first priority mortgage lien and security interest in the Real Property, and a second priority security interest in the Debtor's personal property and equipment.  Class 4 is Impaired.

    B.    <u>Unsecured Claims</u>.

        1.      <u>Class 5 – Allowed Unsecured Claims</u>.

        Class 5 consists of all Allowed Unsecured Claims.  Class 5 is Impaired.

    C.    <u>Equity Interests</u>.

        1.      <u>Class 6 – Equity in the Debtor</u>.

        Class 6 consists of 100% of the membership interests in the Debtor.  Class 6 is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.   Administrative Expense Claims.

Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms.  The Allowed Administrative Claims shall be paid from cash on hand or through pre-petition retainers.  The Debtor estimates Administrative Claims to be approximately $35,000.00 (without deducting pre-petition retainers).

B.   Priority Tax Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be paid in full through equal monthly payments of principal and interest, with interest paid and accrued at the fixed rate of 4.25% per annum, with such payments ending on the date that is 60 months after the Petition Date.  The filed amount of Priority Tax Claims is currently $9,736.91.  The Debtor estimates the Allowed Amount of such Priority Tax Claims will not exceed $8,070.34.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.

There are three (3) classes of Unimpaired Classes as follows:

A.   Secured Claims

1.   Class 1 – Seminole County Tax Collector (2015 Tangible Property Taxes)

Class 1 consists of the Allowed Secured Claim of the Seminole County Tax Collector for the tangible property taxes assessed on the Debtor's personal property for the 2015 tax year, which taxes are not yet due. The Class 1 Claim is secured by a statutory lien on the Debtor's personal property and equipment. In full satisfaction of its Class 1 Allowed Secured Claim, the Debtor shall pay the Class 1 Claim in full when such becomes due and owing in the ordinary course of business under Florida law. The Seminole County Tax Collector shall retain its statutory lien and all rights under Florida law related to its Class 1 Claim.

          2.          <u>Class 2 – Seminole County Tax Collector (2015 Real Property Taxes)</u>

Class 2 consists of the Allowed Secured Claim of the Seminole County Tax Collector for the real property taxes due on the Real Property for the 2015 tax year, which taxes are not yet due. The Class 2 Claim is secured by a statutory lien on the Real Property. In full satisfaction of its Class 2 Allowed Secured Claim, the Debtor shall pay the Class 2 Claim in full when such becomes due and owing in the ordinary course of business under Florida law. The Seminole County Tax Collector shall retain its statutory lien and all rights under Florida law related to its Class 2 Claim.

        B.        <u>Equity Interests.</u>

          1.          <u>Class 6 – Equity in the Debtor</u>.

Class 6 consists of 100% of the membership interests in the Debtor. All Class 6 Interests shall be retained in the same proportion existing as of the Petition Date.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES.

        A.        <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event

the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VIII, Section J, of this Plan, and other applicable law.

There are four (4) Classes of Claims and Interests that are Impaired.  Treatment for these classes is as follows:

B.    Secured Claims.

1.    Class 3 – SunTrust Bank.

Class 3 consists of the Allowed Secured Claim of SunTrust Bank that is secured by a lien on the Debtor's personal property and equipment.  In full satisfaction of its Class 3 Allowed Secured Claim, SunTrust shall receive monthly payments of principal and interest based on a fixed 4.25% per annum rate of interest, amortized over 25 years, with a maturity date 60 months after the Effective Date.  SunTrust shall retain its lien on the personal property and equipment to the same extent and priority existing as of the Petition Date.  To the extent, and until SunTrust has an Allowed Claim but not an Allowed Secured Claim, SunTrust's Allowed Claim shall be treated as an Allowed Class 5 Claim with such payments outlined herein shall be distributed to Allowed Class 5 Claimholders.

  2. <u>Class 4 – TD Bank</u>.

  Class 4 consists of the Allowed Secured Claim of TD Bank, which amount shall be equal to the full amount of its filed proof of claim, and such amounts allowed pursuant to § 506(b) of the Bankruptcy Code, less the application of adequate protection payments made towards outstanding principal and interest during the pendency of the Bankruptcy Case, as agreed to by the Debtor and TD Bank in that certain Forbearance Term Sheet and Restructuring Support Agreement.  The Class 4 Claim is secured by a first priority mortgage lien and security interest in the Real Property, and a second priority security interest in the Debtor's personal property and equipment.

  In full satisfaction of its Class 4 Allowed Secured Claim, TD Bank shall retain its liens on the Real Property and personal property to the same extent and priority existing as of the Petition Date, and beginning on the Effective Date shall receive monthly installments of principal and interest over a three (3) year term with interest accruing and paid at the fixed rate of 4.25%.  For the first 24 months after the Effective Date, monthly payments shall be based on a 20 year amortization schedule; and for the final 12 months, on a 15 year amortization schedule.  At the end of the three (3) year term, the Class 4 Claim shall mature and be payable in full.

  On or before the Effective Date, the Debtor shall execute such loan documents as TD Bank deems reasonably necessary to amend, restate, or modify the terms of the existing promissory note consistent with the Plan and the Restructuring Support Agreement.  Such documents shall include, without limitation, a modified, restated, and renewal promissory note which shall include a principal balance equal to the amount of its Allowed Class 4 Claim (the "Renewal Note"), which Allowed Class 4 Claim, notwithstanding anything else herein, shall be in the amount of the "Indebtedness" as defined in the Restructuring Support Agreement and shall

include TD Bank's pre-petition and post-petition attorney's fees and costs.  Failure of the Debtor to execute the Renewal Note and such other additional loan documents (collectively, the "Renewal Loan Documents") as TD Bank deems reasonably necessary on or before the Effective Date shall be a default under the terms of the Plan.  Except as otherwise agreed by the Debtor and TD Bank or as otherwise provided herein, the terms, conditions, and covenants in the Renewal Loan Documents shall be the same as the terms, conditions, and covenants in the existing loan documents and shall also be in accordance with the terms of the Restructuring Support Agreement.  The Debtor shall pay all of TD Bank's attorney's fees and costs related to drafting and closing on the Renewal Loan Documents and such amounts shall not exceed Ten Thousand Dollars ($10,000.00) and the failure to pay such amounts at closing shall be a default under the terms of the Plan.  Unless otherwise expressly stated herein, the terms and conditions of the Restructuring Support Agreement remain in force between the Debtor and TD Bank until the closing on the Renewal Loan Documents, at which point the Renewal Loan Documents and this Plan shall supersede the Restructuring Support Agreement as the complete documentation of the agreements between the Debtor and TD Bank.

      C.     <u>Unsecured Claims</u>.

          1.     <u>Class 5 – Allowed Unsecured Claims</u>.

Class 5 consists of all Allowed Unsecured Claims against the Debtor.  In full satisfaction of their Allowed Unsecured Claims, Holders of Class 5 Claims shall receive the following: (i) quarterly payments under the Cash Flow Note, (ii) the net proceeds of any Causes of Action after payment of all administrative expenses and post-Effective Date professional fees and costs; (iii) the payments set forth and outlined in Class 3 as long as SunTrust does not have an Allowed Class 3 Claim, paid quarterly and *pro rata*; and (iv)  guaranteed *pro rata* quarterly payments of One Thousand Five Hundred Dollars and No Cents ($1,500.00) for a period of four (4)

years following the Effective Date.  Notwithstanding the foregoing, no insider shall receive any distribution on account of any Allowed Class 5 Claim. The Cash Flow Note will require quarterly payments for 48 months after the Effective Date equal to fifty percent (50%) of any surplus of the Reorganized Debtor's actual cash balance above the ending cash balance shown on the Projections, which payments shall be distributed *pro rata* to all Class 5 Claim Holders ("Cash Flow Payments"). The maximum Distribution under the Cash Flow Note shall be equal to the total amount of the Class 5 Claims, and no Class 5 Holder shall receive an amount greater than the amount of its Allowed Unsecured Claim.  For purposes of determining Cash Flow Payments, the cash surplus shall be determined quarterly commencing on the first Business Day of the first calendar month after the Effective Date, and continuing each quarter thereafter.  Distributions of Cash Flow Payments shall be paid within thirty (30) days after the books have been closed for each applicable quarter. The net proceeds of any Causes of Action after payment of all administrative expenses and post-Effective Date professional fees and costs, shall be distributed *pro rata* to all Holders of Class 5 Claims within thirty (30) days of the Reorganized Debtor's receipt of such proceeds.  Recovery under the Causes of Action is speculative and may result in no distribution to Class 5 Holders.  Possible Causes of Action include, but are not limited to, such Causes of Action as described in the Debtor's Schedules and Statement of Financial Affairs.  After the Effective Date, the Reorganized Debtor shall send quarterly reports informing Class 5 Holders of the status of any Causes of Action filed.


**ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS**.

The Plan provides the Debtor shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected or subject to a filed motion to reject by

such date, then such unexpired lease or executory contract shall be deemed assumed. The Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date and there are no monetary or non-monetary defaults to cure.

## ARTICLE VII – MEANS OF IMPLEMENTATION.

A.    Business Operations and Cash Flow.

The Plan contemplates that the Debtor will continue to manage and operate its business at the Retail Store. The Debtor believes the cash flow generated by the Retail Store will be sufficient to make all Plan Payments and maintain existing operations, as established by the Projections.

B.    Funds Generated During Chapter 11.

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

C.    Management and Control of Reorganized Debtor.

The operations of the Reorganized Debtor shall continue to be overseen by the Debtor's current officers, Mr. and Mrs. Jones. The powers of the officers of the Reorganized Debtor shall be substantially the same as the officer's powers as of the Petition Date. During the term of the Plan, the respective salaries of Mr. and Mrs. Jones shall remain at the same amounts approved by the Bankruptcy Court during the pendency of the Bankruptcy Case, or lower.

D.    Procedures For Resolving Disputed Claims.

1.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided herein, the Debtor or Reorganized Debtor shall have the exclusive right to make and file objections to all Claims.  All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Nothing within this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that any Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest.  Except as set forth in herein, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any

21

appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.      <u>Cumulative Remedies</u>.

All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

4.      <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided herein, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

     5.     <u>Allowance of Claims and Interests</u>.

     (i)     <u>Disallowance of Claims</u>.  All Claims held by Persons against whom the Debtor has obtained a Final Order establishing liability for a cause of action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code ("Causes of Action") shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtor by that Person are turned over to the Debtor.  Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action.

     (ii)     <u>Allowance of Claims</u>.

     Except as expressly provided herein, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

     6.     <u>Controversy Concerning Impairment</u>.

     If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

**<u>ARTICLE VIII – MISCELLANEOUS</u>.**

     A.     <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for herein will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtor's operating agreement, if so required, such that the provisions of this Plan can be effectuated. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

B.     Post-Confirmation Status Report.

Within 90 days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.     Preservation, Prosecution, and Defense of Causes of Action.

Except as set forth herein, upon Confirmation, the Debtor and the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, including the Avoidance Action, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor, the Bankruptcy Estate, or the Committee. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and collection; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtor deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance

24

with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

D.      Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval.

E.      Conditions to Effectiveness.

The Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.  The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

G.      Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

H.       Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

I.       Modification of Plan.

The Debtor may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

J.       Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters brought by the Debtor or the Reorganized Debtor, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 3 Claims;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the provisions of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All Claims arising from the rejection of any executory contract or lease;

9.    Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor.

K.     Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

L.     Cramdown.

The Debtor reserves the right to seek confirmation of this Plan under § 1129(b) of the Code.

M.     Discharge.

As of the Effective Date and pursuant to § 1141 of the Code, the Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h), and 502(i) of the Code, whether or not:

1.     A proof of claim based upon such debt is filed or deemed filed under § 501 of the Code;

2.     A Claim based upon such debt is allowed under § 502 of the Code; or

3.     The Holder of a Claim or Interest based upon such debt has accepted the Plan.

N.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Amended

Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed

by United States Mail to the following:

<u>Counsel for the Debtor</u>:

Justin M. Luna, Esq.
Latham, Shuker, Eden & Beaudine, LLP
111 E. Magnolia Ave., Suite 1400
Orlando, Florida  32801

<u>Debtor</u>:

Tireco, Inc. d/b/a Formula Tire & Auto Care
Attn. J. Michael Jones
2600 West State Road 434
Longwood, Florida 32779

<u>United States Trustee</u>:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida  32801

O.    <u>Manner of Payment</u>.

Any payment of Cash made under this Plan may be made either by check drawn on

an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer

from a domestic bank, at the option of the Reorganized Debtor.

P.    <u>Compliance with Tax Requirements</u>.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in

making Distributions shall comply with all tax withholding and reporting requirements imposed on it

by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such

withholding and reporting requirements.   The Reorganized Debtor may withhold the entire

Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

Q.    Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

R.      Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 7 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 7 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor.  Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Class 7 Claim with respect to the check originally issued.

S.      Transfer Taxes.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**T.      Conditional Injunctions.**

**EXCEPT AS EXPRESSLY PROVIDED HEREIN, OR TO OTHERWISE ENFORCE THE TERMS OF THE PLAN, AS OF THE CONFIRMATION DATE ALL PERSONS LISTED ON THE DEBTOR'S SCHEDULE H (DOC. NO. 36) WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, OTHER DEBT OR LIABILITY, AN INTEREST OR OTHER RIGHT OF AN EQUITY SECURITY THAT IS IMPAIRED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ARE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS FOR SO LONG AS THE REORGANIZED DEBTOR AND THE GUARANTORS ARE NOT IN DEFAULT OF ANY OBLIGATION UNDER THE PLAN OR ANY AGREEMENTS CONTEMPLATED BY THE PLAN, ON ACCOUNT OF ANY SUCH IMPAIRED OR TERMINATED CLAIMS, DEBTS OR LIABILITIES, INTERESTS OR RIGHTS:**

**(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING AGAINST THE GUARANTORS OR THEIR PROPERTY INTERESTS, OTHER THAN TO ENFORCE ANY RIGHT PURSUANT TO THE PLAN;**

**(II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE**

GUARANTORS OR THEIR PROPERTY INTERESTS, OTHER THAN AS PERMITTED PURSUANT TO (I) ABOVE;

(III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE GUARANTORS OR THEIR PROPERTY INTERESTS;

(IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE GUARANTORS; AND

(V) COMMENCING OR CONTINUING ANY ACTION AGAINST THE GUARANTORS, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.

FROM AND AFTER THE CONFIRMATION DATE, THE INJUNCTIONS DESCRIBED IN HEREIN SHALL BECOME EFFECTIVE, AND ALL HOLDERS OF CLAIMS AND INTERESTS SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY OF THE ACTIONS DETAILED HEREIN FOR SO LONG AS THE REORGANIZED DEBTOR AND GUARANTORS REMAIN IN COMPLIANCE WITH THE PLAN AND ANY AGREEMENTS CONTEMPLATED BY THE PLAN, AND EXCEPT AS SPECIFICALLY PROVIDED FOR IN THE PLAN.

**DATED** this 1st day of October 2015, in Orlando, Florida.

/s/ Justin M. Luna
Justin M. Luna, Esq.
Florida Bar No. 0037131
jluna@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for the Debtor*